STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JAMES A. HASKELL AND MARK C. HASKELL, DEFENDANTS-RESPONDENTS.

Argued March 18, 1985—Decided July 31, 1985.

*Denise H. Pappas,* Assistant Prosecutor, argued the cause for appellant (*Lee S. Trumbull,* Morris County Prosecutor, attorney; *Allan J. Iskra,* Assistant Prosecutor, on the letter-brief).

*Diane Toscano,* Deputy Public Defender, argued the cause for respondent James A. Haskell (*Thomas S. Smith, Jr.,* Acting Public Defender, attorney).

*Craig V. O'Connor,* Designated Counsel, argued the cause for respondent Mark C. Haskell (*Thomas S. Smith, Jr.,* Acting Public Defender, attorney).

*Carol M. Henderson,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

This appeal raises the question whether co-defendants who have given statements to the police implicating each other should receive separate trials. The trial court ordered a joint trial after determining that the statements "interlocked" and that limiting jury instructions would adequately protect the defendants. The Appellate Division reversed and remanded "for multiple trials or such other action as may be consistent with *R.* 3:15–2(a)." 195 *N.J.Super.* 235, 239 (1984). We affirm.

I

In the course of investigating the death of John Mastandrea, the Boonton Police obtained statements from the defendant brothers, James and Mark Haskell. As described by the Appellate Division, "[f]our statements were taken from defendant James Haskell, the last of which graphically describes how Mark Haskell killed the decedent. Mark gave five statements, the last of which admits the killing. The statements also depict James as at least an accessory after the fact." 195 *N.J.Super.* at 236. To this we add our observation that James' statement does not acknowledge his prior knowledge of Mark's alleged intent to kill the decedent or James' participation in the killing.

One week after giving those statements, the defendants were indicted for murder and possession of a weapon with intent to use it unlawfully in connection with the murder of Mastandrea. Because the State intends to offer each defendant's statement in evidence, the parties filed cross-motions to determine whether Rule 3:15–2 requires separate trials. In denying the defendants' motion for separate trials, the trial court concluded that the statements were "interlocking" within the meaning of *Par-*

*ker v. Randolph,* 442 *U.S.* 62, 99 *S.Ct.* 2132, 60 *L.Ed.*2d 713 (1979). The Appellate Division reversed, holding that New Jersey case law and Rule 3:15–2(a) did not permit an exception for "interlocking confessions" to the requirement of separate trials.

## II

At one time, both federal and New Jersey law permitted joint trials of co-defendants who had given separate confessions. Later, this Court and the United States Supreme Court independently determined that if references to a defendant could not effectively be deleted from a co-defendant's statement, the defendants should receive separate trials. More recently, in *Parker v. Randolph, supra,* 442 *U.S.* 62, 99 *S.Ct.* 2132, 60 *L.Ed.*2d 713, the United States Supreme Court has taken a different approach when the confessions of multiple defendants "interlock." It was the trial court's adoption of that approach that led in the present case to the order for a joint trial.

The issue of the propriety of a joint trial of a defendant and a confessing co-defendant first arose in New Jersey in *State v. Rios,* 17 *N.J.* 572 (1955). In *Rios,* four men were convicted in a joint trial for the robbery-murder of a luncheonette owner. Before trial, two defendants moved for separate trials on the grounds that the admission in evidence of statements or confessions of their non-testifying co-defendants would be prejudicial. The trial court denied the motions, and charged the jury that the defendants' statements were admissible only against the declarant. On appeal, this Court held that the trial court had not abused its discretion under former Rule 3:5–7 in denying the defendants' motion. *Id.* at 585.

Two years later, in *Delli-Paoli v. United States,* 352 *U.S.* 232, 77 *S.Ct.* 294, 1 *L.Ed.*2d 278 (1957), the United States Supreme Court reached a similar result. In *Delli-Paoli,* the Court ruled that a confession of one co-defendant after the termination of an alleged conspiracy was admissible in evidence

against another of the remaining defendants in a joint trial. Underlying the decision was the assumption that the jury was capable of following the instruction to disregard the evidence implicating a non-confessing co-defendant. Finding nothing in the record to suggest that the jury had disregarded the limiting instruction and that substantial evidence in the record supported the guilty verdicts, the Court affirmed the convictions. 352 *U.S.* at 243, 77 *S.Ct.* at 300, 1 *L.Ed.*2d at 286.

In a dissenting opinion, Justice Frankfurter disagreed that a cautionary instruction could prevent prejudice to an implicated co-defendant. 352 *U.S.* at 247, 77 *S.Ct.* at 302, 1 *L.Ed.*2d at 288. He contended that there was no justification for allowing the prosecution "the windfall of having the jury be influenced by evidence against a defendant which, as a matter of law, they should not consider but which they cannot put out of their minds." *Id.* at 248, 77 *S.Ct.* at 303, 1 *L.Ed.*2d at 289.

Ten years after our decision in *State v. Rios*, we held that a trial court must grant a defendant's motion "to eliminate references to himself from a codefendant's statement which the prosecution proposes to place in evidence * * *." *State v. Young*, 46 *N.J.* 152, 157 (1965). In *Young*, we rejected the State's contention that a limiting instruction was sufficient to safeguard the implicated defendant's right to a fair trial. Justice Proctor wrote: "Not only is there a grave question as to the efficacy of this type of instruction in guiding the jury's deliberations, but, wherever there is a potentiality for prejudice in a criminal trial, our courts should take all reasonable measures to protect those defendants whose rights are endangered." *Id.* at 157. The Court distinguished *Rios*, stating that in that case the issue of prejudice caused by a joint trial arose on the defendants' appeals following their convictions. *Rios*, the Court said, held only that the trial court had not abused its discretion under former Rule 3:5–7 in denying the motions for severance. *Id.*

Consistent with the procedure outlined in *State v. Young*, *supra*, 46 *N.J.* at 158–59, the Court subsequently adopted Rule 3:15–2(a), which provides:

Motion by State Before Trial. If 2 or more defendants are to be jointly tried and the prosecuting attorney intends to introduce at trial a statement, confession or admission of one defendant involving any other defendant, he shall move before trial on notice to all defendants for a determination by the court as to whether such portion of the statement, confession, or admission involving such other defendant can be effectively deleted therefrom. The court shall direct the specific deletions to be made, or, if it finds that effective deletions cannot practically be made, it shall order separate trials of the defendants. Upon failure of the prosecuting attorney to so move before trial, the court may refuse to admit such statement, confession or admission into evidence at trial, or take such other action as the interest of justice requires.

As the rule states, a joint trial is permissible if references to a co-defendant can be effectively deleted from a statement, confession, or admission. *See State v. Broxton*, 49 *N.J.* 373, 376 (1967). The rule requires separate trials, or other appropriate action, however, if a defendant will suffer any prejudice from the introduction of a co-defendant's confession.

Three years after our decision in *Young*, the United States Supreme Court reached the same result under federal law in *Bruton v. United States*, 391 *U.S.* 123, 88 *S.Ct.* 1620, 20 *L.Ed.* 2d 476 (1968). In that case, defendants Bruton and Evans were convicted of armed postal robbery. At trial, a postal inspector testified that Evans had orally confessed that both Evans and Bruton committed the crime. On appeal, the Supreme Court expressly overruled its *Delli Paoli* decision and held that "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining [Bruton's] guilt, admission of Evans' confession in this joint trial violated [Bruton's] right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Id.* at 126, 88 *S.Ct.* at 1622, 20 *L.Ed.*2d at 479. The Court's rejection of *Delli Paoli* was predicated on its belief that juries could not disregard the prejudicial impact of a co-defendant's confession.

In certain decisions since *Bruton*, the Court has, in the face of overwhelming evidence of guilt, sustained a conviction when a co-defendant's admission involving the defendant was allowed into evidence with a limiting instruction. The admission of the statement into evidence in those cases was viewed as "harmless" error. *See, e.g., Harrington v. California*, 395 *U.S.* 250, 89 *S.Ct.* 1726, 23 *L.Ed.*2d 284 (1969); *Schneble v. Florida*, 405 *U.S.* 427, 92 *S.Ct.* 1056, 31 *L.Ed.*2d 340 (1972); *Brown v. United States*, 411 *U.S.* 223, 93 *S.Ct.* 1565, 36 *L.Ed.*2d 208 (1973). Notwithstanding the recognition of a harmless error exception, *Bruton* remained undisturbed until the plurality decision in *Parker v. Randolph*.

In *Parker*, the Court held that *Bruton* does not apply when the confession of a co-defendant is supported by and "interlocks" with a defendant's own confession. The convictions in *Parker* stemmed from the defendants' involvement in a scheme to rob one gambler to recoup the losses suffered by another gambler in a series of fixed card games. Although the first gambler was shot and killed before the defendants appeared, one of their associates gathered up the proceeds from the game and, together with the late-arriving defendants, fled from the scene. Upon capture by the police, the three defendants confessed to their participation in the robbery. These confessions provided the primary evidence in the prosecution, which resulted in the convictions of all three defendants for felony-murder. *Id.* 442 *U.S.* at 66, 99 *S.Ct.* at 2135, 60 *L.Ed.*2d 713.

In upholding the convictions, the *Parker* plurality argued that the prejudice in *Bruton* was caused by admitting a non-testifying co-defendant's confession against a defendant who had not confessed. In that instance, the co-defendant's confession could add decisive weight to the prosecution's case. 442 *U.S.* at 72, 99 *S.Ct.* at 2138, 60 *L.Ed.*2d at 723. The Court said that when the defendant has admitted his own guilt, however, the constitutional right of cross-examination of a confessing co-defendant has "far less practical value." *Id.* The plurality reasoned that when a defendant's unchallenged admission of

guilt is admitted into evidence, the benefit from impeaching a co-defendant's confession through cross-examination and the risk of prejudice resulting from a co-defendant's "motivation to shift blame to others" will be small. 442 *U.S.* at 73, 99 *S.Ct.* at 2139, 60 *L.Ed.*2d at 723. Therefore, the plurality held that "admission of interlocking confessions with proper limiting instructions conforms to the requirements of the Sixth and Fourteenth amendments to the United States Constitution." 442 *U.S.* at 75, 99 *S.Ct.* at 2140, 60 *L.Ed.*2d at 724–25.

Justice Blackmun concurred in the result, but rejected the Court's "interlocking confession" exception. He wrote:

The fact that confessions may interlock to some degree does not ensure, as a per se matter, that their admission will not prejudice a defendant so substantially that a limiting instruction will not be curative. The two confessions may interlock in part only. Or they may cover only a portion of the events in issue at the trial. Although two interlocking confessions may not be internally inconsistent, one may go far beyond the other in implicating the confessor's codefendant. In such circumstances, the admission of the confession of the codefendant who does not take the stand could very well serve to prejudice the defendant who is incriminated by the confession, notwithstanding that the defendant's own confession is, to an extent, interlocking. * * *

Where he was unfairly prejudiced, the mere fact that prejudice was caused by an interlocking confession ought not to override the important interests that the Confrontation Clause protects.

[442 *U.S.* at 79, 99 *S.Ct.* at 2142, 60 *L.Ed.*2d at 727.]

Justice Blackmun urged the Court to adhere to a harmless-error analysis, and he concurred in the result because he found that admitting the co-defendants' confessions was "harmless beyond a reasonable doubt." *Id.* at 77, 99 *S.Ct.* at 2141, 60 *L.Ed.*2d at 726.

Justice Stevens, joined by Justices Brennan and Marshall, dissented. According to the dissent, the proper inquiry was not whether a co-defendant's statement interlocked to some degree with the defendant's, but whether the defendant was prejudiced by the introduction of the co-defendant's confession. An inculpatory statement by a defendant does not eliminate the potentially unreliable and prejudicial error of a co-defendant's confession. *Id.* at 84–86, 99 *S.Ct.* at 2145–46, 60 *L.Ed.*2d at 730–31. Justice Stevens concluded that, notwithstanding some interlock

between the extrajudicial statements of multiple defendants, the jury cannot realistically be expected to disregard the prejudice to one defendant who has been deprived of the right to confront his accuser with discrepancies between their stories. *Id.* at 87–88, 99 *S.Ct.* at 2146–47, 60 *L.Ed.*2d at 732.

In the present case, it is arguable that the statements of the co-defendants do not interlock. As previously noted, the statements differ concerning James' prior knowledge of Mark's alleged intent to kill Mastandrea and of James' participation in the killing. Assuming, as the State contends, that the statements interlock, it remains for us to determine whether this Court should recognize the interlocking confessions exception. Recent decisions of the Appellate Division and of the Law Division have adopted the interlocking confessions rule of *Parker* as an exception to Rule 3:15–2(a). In *State v. Hardison,* 204 *N.J.Super.* 1, 6 (1984), aff'd on other grounds, 99 *N.J.* 379 (1985); *State v. Jackson,* 204 *N.J.Super.* 13, 19 (1984), *aff'd on other grounds,* 99 *N.J.* 379 (1985), the Appellate Division upheld the defendants' convictions for armed robbery and other offenses after finding that statements made to the police by each defendant were interlocking. That finding was based on the court's view that "the statements of both defendants admitted their presence at the scene of both robberies although both defendants tended to minimize their participation." *Jackson, supra,* 204 *N.J.Super.* at 20; *Hardison, supra,* 204 *N.J.Super.* at 7. The court alternatively based its holding on the conclusion that the admission of the statements was "harmless error."

In *State v. Lyons,* 194 *N.J.Super.* 616 (Law Div.1984), the State moved for a joint trial of three defendants. The trial court granted the State's motion, notwithstanding that effective deletions could not be made from statements of each defendant implicating the co-defendants. The court concluded that the statements interlocked because "each of the instant statements places its confessing defendant 'at the scene with a fair implication of knowing participation.'" *Id.* at 620 (quoting *United*

*States ex rel Duff v. Zelker*, 452 *F*.2d 1009, 1010 (2d Cir.1971), *cert. denied*, 406 *U.S.* 932, 92 *S.Ct.* 1807, 32 *L.Ed.*2d 134 (1972)). According to the court, Rule 3:15–2(a) did not bar admission of interlocking confessions because the rule applied only when the State intends "to introduce at trial *a* statement, confession or admission of *one* defendant involving any other defendant * * *." *Id.* 194 *N.J.Super.* at 621 (emphasis in original). Therefore, the court found that Rule 3:15–2(a) did not address a situation involving statements made by more than one defendant.

■ In the present case, the Appellate Division rejected *State v. Lyons*, concluding that the right of a defendant to confront a confessing co-defendant does not depend on the number of confessions or defendants. 195 *N.J.Super.* at 238. As the Appellate Division observed, Rule 3:15–2 applies to any multiple-defendant case. *Id.* We agree.

The problem that *Young* and Rule 3:15–2 sought to redress was the prejudice that might be caused by the admission of a co-defendant's confession, which, although implicating another defendant, could not be challenged at trial. This problem can exist, as here, regardless of the number of confessions or defendants involved in the case.

■ As noted in *Young*, the out-of-court statement of a co-defendant is inadmissible against another defendant because admission of the statement violates the rule prohibiting hearsay and the defendant's fundamental right to confront witnesses. *State v. Young, supra,* 46 *N.J.* at 156. Such statements do not become admissible simply because the confession of a co-defendant is corroborated to some degree by an inculpatory admission of the defendant.

■ In contrast to *Parker's* focus on the diminution of prejudice when both defendants have confessed, the goal of Rule 3:15–2(a) is to preclude prejudice before it arises. We continue to believe that the more salutary practice is to grant a

motion to sever when effective deletion of all references to co-defendants cannot be made. Not only does that practice preclude the possibility of prejudice to the defendant, but it saves appellate courts from having to speculate whether juries were prejudiced by the presentation of otherwise inadmissible evidence. *See Delli Paoli, supra,* 352 *U.S.* at 248, 77 *S.Ct.* at 303, 1 *L.Ed.*2d at 289 (Frankfurter, J., dissenting). Speculation about the "practical value" of the right to confront a confessing co-defendant is not the appropriate focus in a pre-trial motion for severance. Rather, the focus should be on taking "reasonable measures to protect those defendants whose rights are endangered." *State v. Young, supra,* 46 *N.J.* at 157. Consequently, when the confession of any co-defendant involving any other co-defendant cannot be effectively excised, the trial court should order separate trials.

In reaching this result, we rely on *State v. Young, supra,* and on Rule 3:15–2(a). We do not rely on federal authorities, but refer to them solely for illustrative purposes. *See Michigan v. Long,* 463 *U.S.* 1032, 103 *S.Ct.* 3469, 77 *L.Ed.*2d 1201 (1983). In this regard, Judge Dreier identified a fundamental tenet of our federalist system in observing that "[t]here is no constitutional impediment against New Jersey providing a more protective rule than that followed under Federal law." 195 *N.J.Super.* at 239.

From time to time, cases may arise where the admission of a co-defendant's statement in a joint trial constitutes harmless error. *See State v. Hardison, supra,* 99 *N.J.* 1009; *State v. Jackson, supra,* 204 *N.J.Super.* 13; *see also State v. Carter,* 54 *N.J.* 436, 442–46 (1969) (error, if any, was harmless in allowing testimony of oral non-inculpatory statement of defendants at their joint trial); *cf. State v. Rios, supra,* 17 *N.J.* at 585 (under former rule, not an abuse of trial court's discretion to deny joint trial in light of ample evidence of guilt). In the present case, however, we are asked to review not a conviction in light of overwhelming evidence of guilt, but a pre-trial order directing a joint trial.

Consistent with Rule 3:15–2(a), our concern is to provide not remedial, but preventive justice.

The judgment of the Appellate Division is affirmed.

*For affirmance* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal* —none.